**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Milton Brown, | No. CV-24-01760-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Walmart Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant Walmart Inc.'s ("Walmart") Motion for Summary Judgment (Doc. 43) against Plaintiff Anthony Brown. Oral argument on the motion was held on June 5, 2025. For the reasons discussed below, Defendant's motion is granted.

## BACKGROUND

On April 22, 2023, Plaintiff fell while walking alone inside the vestibule[1] of a Walmart store. (Doc. 44 at 1, 3; Doc. 48 at 2, 6, 9). Plaintiff testified that his fall was caused by a "small," rock-like material about an inch in diameter, but he never saw the object. (Doc. 47-1 at 12-13). No liquid or oily substance was present. (*Id.* at 13).

Defendant provided several recordings from various surveillance cameras in the store.[2] While two of the surveillance videos showing the vestibule are "pixelat[ed]" and

---

[1] Defendant defines its vestibule as "the part of the store just after the entry doors, where shopping carts are kept." (Doc. 43 at 1).

[2] A court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape." *Scott v. Harris,* 550 U.S. 372, 380-81 (2007). Seven videos were provided in this case. (Doc. 46 (Walmart Surveillance Videos [VR20230422000485 Clip1.mp4], [VR20230422000485

"skip[]" (Doc. 44 at 3; Doc. 48 at 4),  at oral argument both parties acknowledged that the videos could be admitted into evidence for what they do show.  One of the cameras recorded Plaintiff's fall and each of the cameras captured some footage of Plaintiff, even if only briefly.

At approximately 12:49 pm, Plaintiff—wearing a long-sleeved grey shirt and red shorts—walked through the check-out area nearest to the vestibule, holding at least one plastic bag, before turning to his left toward the vestibule and the exit doors. (Clip C at 12:49:26-:49; Clip D at 12:49:26-:49).



(Clip C at 12:49:30-12:49:39 (left to right, top row then bottom row)).

Clip2.mp4], [VR20230516000086 Clip1.mp4], [VR20230516000086 Clip2.mp4], [VR20230516000086 Clip3.mp4], [VR20230516000086 Clip4.mp4], [VR20230516000086 Clip5.mp4], Walmart (USB Drive filed Sept. 18, 2025) (on file with the Court)).  These videos will be cited as follows:
- VR20230422000485 Clip1.mp4 ("Clip A")
- VR20230422000485 Clip2.mp4 ("Clip B")
- VR20230516000086 Clip1.mp4 ("Clip C")
- VR20230516000086 Clip2.mp4 ("Clip D")
- VR20230516000086 Clip3.mp4 ("Clip E")
- VR20230516000086 Clip4.mp4 ("Clip F")
- VR20230516000086 Clip5.mp4 ("Clip G")

Any timestamps refer to the timestamp on the video.  At oral argument, the parties agreed that the videos are admissible for what they show.

Upon turning left, Plaintiff entered a short, wide walkway between the checkout area and the vestibule, with a series of kiosks and an ice machine to his right, and a "Coinstar" kiosk and the door to a storage room to his left. (Clip B at 12:49:46; Clip E at 12:49:46-:48; Clip G at 12:49:29-:34). He slowly made his way to the right while moving along the walkway. (Clip C at 12:49:26-:49; Clip D at 12:49:26-:49).



(Clip G at 12:49:29-12:49:35).

As Plaintiff continued to walk towards the exit doors, still veering to the right, he approached two anti-shoplifting sensors—mounted into the floor at either side of the walkway with white covers that are printed with Walmart's advertisements—and a metal threshold marking the boundary between the store's brown flooring and the black rubber surface of the vestibule (the "Interior Threshold"). (Clip B at 12:49:46; Clip E at 12:49:46-:48; Clip G at 12:49:29-:34; Doc. 44-7 at 3-4). Just before reaching the sensors, Plaintiff leaned to the right with his head down, staggered, and fell slightly into the sensor immediately to his right. (Clip B at 12:49:46; Clip E at 12:49:46-:48). He hit the sensor with his right shoulder and knocked it into the wall of the walkway. (Clip B at 12:49:46; Clip E at 12:49:46-:48). Plaintiff straightened himself, pushing off the sensor, and then

crossed over the Interior Threshold into the vestibule, turning again to his right towards the exit doors. (Clip B at 12:49:46; Clip E at 12:49:47-:48).



(Clip B at 12:49:46; Clip E at 12:49:46-:48).

Upon turning right, Plaintiff crossed into the vestibule, facing the exit doors of the store—two sets of sliding glass doors—which look out onto the parking lot. (Clip F at 12:49:51). At some point after passing over the Interior Threshold, Plaintiff began to fall forward, twisting so that the left side of his body was closest to the vestibule floor. (*Id.*). As he fell, Plaintiff's left shoe began to slip off his foot and he reached forward, attempting to grab the edge of the sliding glass door closest to him. (*Id.*). When his shoe came all the way off, his body twisted further, making first contact with the ground along the outer edge of his left leg and landing on his hip. (*Id.* at 12:49:51-:52). The left side of Plaintiff's torso hit the floor next before as he came to a rest with his waistline on top of the metal threshold

that marks the store exit (the "Exterior Threshold"). (*Id.*). Plaintiff's feet remained inside of the store, with his legs laying on the black flooring of the vestibule while his upper body lay on the ground outside of the door. (*Id.*). Plaintiff then rolled onto his right side, putting his back toward the sliding door which he attempted to grab moments earlier. (Clip A at 12:50:06; Clip F at 12:49:56-:50:00, :50:21). During his fall, Plaintiff's feet never left the vestibule and never contacted Exterior Threshold. (*See* Clip F at 12:49:51-:52). The following images are captured from the surveillance video, showing the trajectory of Plaintiff's fall:



(*Id.*)

In June 2024, Plaintiff brought the instant suit against Defendant, alleging two claims: Negligence (Count I) and Premises Liability (Count II). (Doc. 1-1 at 19-21). On August 29, 2025, Defendant moved for summary judgment. (Doc. 43).

**DISCUSSION**

**I.    Spoliation**

As an initial matter, the Court finds that Plaintiff's argument that summary judgment should be denied "because of Walmart's failure to properly preserve footage of Mr. Brown's fall" (Doc. 47 at 4, 13-17; Doc. 48 at 13) is meritless. Federal Rule of Civil Procedure 37(e) authorizes the Court to take certain actions against "a party [that] failed to take reasonable steps to preserve" or electronically store information if that information is not preserved or is lost. Plaintiff here urges the Court to take action against Defendant, alleging that "the footage Walmart provided in the process of discovery has been degraded and deteriorated to the point that it does not even actually show [Plaintiff] falling" and that

"the video skips out during the precise moments of the fall." (Doc. 47 at 4; Doc. 48 at 4, 13). The footage does in fact capture Plaintiff's fall as described (and shown) above. (Clip F at 12:49:51-:52).

As such, Rule 37(e) does not apply here because the footage was stored and was not "lost" within the meaning of the rule. *See Gregory v. Montana*, 118 F.4th 1069, 1074 (9th Cir. 2024) (describing evidence as "lost" when the original copy of a recording was deleted and where the quality of a recording—taken on a cell phone—of the original recording "was too poor to clearly make out what was depicted."). Plaintiff's counsel accuses Defendant of "a transparent attempt to exploit a purported lack of evidence [Defendant] itself created" and hyperbolically describes the deterioration of the footage. (Doc. 47 at 16, 21). Though the videos here are pixelated and skip, Plaintiff makes no demonstration that Defendant in any way altered or lost the original recordings. Moreover, the tapes still distinctly depict the moment of Plaintiff's fall, showing when, where, and how he fell. (Doc. 47 at 16; Clip F at 12:49:51-:52).

Accordingly, there has been no spoliation and summary judgment is not denied on that basis.

## II.    Summary Judgment

### A.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. When considering motions for summary judgment, courts should construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Specifically, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "[T]he threshold inquiry . . . [is] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### B.    Analysis

Defendant's Motion for Summary Judgment asserts that no reasonable jury could find for Plaintiff on the issue of liability. (Doc. 43 at 11-13). For the reasons discussed below, no reasonable jury could find that any dangerous condition that Defendant caused, knew about, or should have known about caused Plaintiff to fall. As such, the Court need not address the parties' other arguments and Defendant is entitled to summary judgment.

Under Arizona law, "[n]egligence and premises liability each require proof that (1) the defendant owed a duty to the plaintiff to conform to a standard of conduct that protects the plaintiff from an unreasonable risk of harm;[3] (2) the defendant breached that standard; (3) a causal connection exists between the defendant's acts or omissions and the plaintiff's injury; and (4) the plaintiff suffered actual damages." *Perez v. Circle K Convenience Stores, Inc.*, 564 P.3d 623, 626 (Ariz. 2025). In the context of premises liability, a plaintiff must also prove that (1) the dangerous condition was caused by the owner, (2) the owner had actual knowledge or notice of the dangerous condition, or (3) the dangerous condition existed long enough that a reasonable owner should have known about

---

[3] Here, the parties agree that Walmart owed Plaintiff—as its business invitee—"an affirmative duty to make and keep its [stores] reasonably safe." *Perez v. Circle K Convenience Stores, Inc.*, 564 P.3d 623, 627 (Ariz. 2025) (citing *Tribe v. Shell Oil Co.*, 652 P.2d 1040, 1042, 133 Ariz. 517, 519 (1982)).

it. *Walker v. Montgomery Ward & Co., Inc.*, 511 P.2d 699, 702, 20 Ariz. App. 255, 258 (Ct. App. 1973).

Arizona law further requires that a plaintiff show "'but-for causation' or causation-in-fact." *Rogers ex rel. Standley v. Retrum*, 825 P.2d 20, 23, 170 Ariz. 399, 402 (Ct. App. 1991). Under the but-for causation standard, a defendant may only be liable "if his conduct contributed to the result and if that result would not have occurred 'but for' defendant's conduct." *Ontiveros v. Borak*, 667 P.2d 200, 205, 136 Ariz. 500, 505 (1983). Although causation is "usually [a] factual issue[] for the jury, [it] can be resolved as a matter of law when the record supports that result." *Perez*, 564 P.3d at 630.

In his briefing, Plaintiff repeatedly argues that "[t]here is a dispute as to the precise location of Plaintiff's fall" which would pose a genuine issue of material fact sufficient to survive summary judgment. (Doc. 47 at 10, 15-16; Doc. 48 at 2, 4). While making this assertion that "it is unclear exactly where [he] began his fall," Plaintiff contradictorily claims that his fall was caused by a metal threshold with an abrupt change in elevation on the automatic exit/entry door"—i.e., the Exterior Threshold—that posed an "unsafe tripping hazard" which Defendant allowed to persist "for an extended period of time."[4] (Doc. 47 at 1, 3).[5] At oral argument, Plaintiff resolved this contradiction, specifying that the Plaintiff fell over the Exterior Threshold.

Though Plaintiff landed on top of the Exterior Threshold with the upper half of his body laying outside the store and his legs laying inside the vestibule (Clip F at 12:49:51-:52), Plaintiff argues that there is a genuine dispute of material fact as to whether the Exterior Threshold caused his fall. (Doc. 47 at 10-11). The video evidence reveals that this argument is meritless. It shows that Plaintiff's fall began long before he reached the Exterior Threshold. (Clip F at 12:49:51-:52). Plaintiff could not have tripped on something

---

[4] Plaintiff's Complaint only alleges that he "fell on a dangerous condition that was on the floor." (Doc. 1-1 at 18). He does not identify a specific condition or hazard. (*See* Doc. 1-1 at 16-24).
[5] Though Plaintiff previously claimed that "he tripped over a pebble" and that photographs of the area showed evidence of a pebble "in the area of the fall" (Doc. 47 at 11; Doc. 48 at 10), Plaintiff abandoned this position at oral argument and conceded that the alleged pebble was not near the fall and could not have caused it.

that his feet never touched. (*Id.*). As such, even if Walmart breached its duty to business invitees by allowing the dangerous condition of the Exterior Threshold to persist, Plaintiff's causation argument fails: Plaintiff never encountered the alleged hazard. (*Id.*). If "[t]he mere possibility of causation is not enough" to survive summary judgment, *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 167 P.3d 711, 717, 216 Ariz. 454, 461 (Ct. App. 2007), then the impossibility of causation under Plaintiff's theory is fatal to his claim.

## CONCLUSION

In sum, there is no genuine dispute of material fact as to the location or cause of Plaintiff's fall. Because the alleged hazard could not have caused the fall, Defendant is entitled to summary judgment. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Clerk of Court not terminate this action until further instructed by the Court to do so, pending the resolution of proceedings related to the Order to Show Cause issued to Plaintiff's counsel Mr. Steven Jones (Doc. 65).

Dated this 29th day of June, 2026.

_____
G. Murray Snow
Senior United States District Judge